# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THYSSENKRUPP MATERIALS NA, INC. d/b/a ThyssenKruppMaterials Trading North America and THYSSENKRUPP MATERIALS TRADING NA LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>M/V DRAWSKO, her engines, boilers, tackle, etc., *in rem,* PEGASUS DENIZCILIK A.S.; POLSKA ZEGLUGA MORSKA; ERATO TWO SHIPPING LTD.; NORTH AMERICA STEVEDORING COMPANY, LLC, *in personam*;<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:23-cv-00386-SJC-JTG<br><br>**In Admiralty** |

**PLAINTIFFS' OPPOSITION TO POLSKA'S AND ERATO'S**
<u>**MOTION TO DISMISS [DKT. 49]**</u>

Plaintiffs THYSSENKRUPP MATERIALS NA, INC. d/b/a ThyssenKruppMaterials Trading North America and THYSSENKRUPP MATERIALS TRADING NA LLC, by and through their attorneys, KMA Zuckert LLC, hereby submit this brief in opposition to POLSKA ZEGLUGA MORSKA's ("POLSKA") and ERATO TWO SHIPPING LTD.'s ("ERATO") (hereinafter collectively referred to as "Owners") Motion to Dismiss.

<u>**INTRODUCTION**</u>

Defendants' Motion to Dismiss Plaintiffs' Amended Complaint based on a London arbitration clause must be denied as contrary to established law, as the bills of lading do not sufficiently identify the charterparty[1] as a matter of clear precedent. Even if the charter party was

---

[1] A "charterparty" is a contract by which a ship or part thereof is leased. The term also refers to the instrument that establishes the terms and conditions of the charter of the vessel or part thereof. *See Continental Ins. Co. v. Polish Steamship Co.,* 346 F.3d 281, fn. 2 (2d Cir. 2003) (citing *Great Circle Lines, Ltd. v. Matheson & Co.*, 681 F.2d 121, 124 (2d Cir. 1982). A charterparty "is simply a contract for hire of a ship." *Hawkspere Shipping Co. v. Intamex, S.A.,* 330 F.3d 225, 234 (4th Cir. 2003).

properly incorporated, which is denied, the London arbitration clause is unenforceable under §3(8) of COGSA, since English arbitrators would not entertain claims against either Owners or the ship.

## BACKGROUND

Plaintiffs are importers and traders of steel which purchased a certain parcel of steel, consisting of 184 cold rolled steel coils ("the Cargo") from a mill in Turkey for resale in the United States. *See* Commercial Invoices Nos. BORC-12881 dated March 25, 2022, BORC-12850 dated March 25, 2022, BORC-12845-C dated March 25, 2022, BORC-12845-B dated March 25, 2022 and BORC-12845-A dated March 25, 2022, Declaration of Marc Boettner dated February 26, 2024 ("Boettner Dec."), Exh. "A."  The Cargo was loaded aboard Motor Vessel "DRAWSKO" ("the Vessel") in the port of Gemlik, Turkey for ocean carriage to Chicago, Illinois pursuant to Bills of Lading Nos. PDEK2205GMCH0002, 3, 4, 5 and 10 dated March 25, 2022.  Boettner Dec., Exh. "B". Owners allege that a certain time charterparty, annexed to the Declaration of Artur Witkowski dated August 11, 2023 ("Witkowski Dec."), was incorporated by reference in these bills of lading, even though no date or any other information identifying the specific charterparty appears anywhere on the front or back side of each bill of lading.  *Id.*  The Charterers apparently entered into a voyage charterparty with another entity called BORUSAN LOJISTIK.  *Id.,* Exh. "C".  In addition, Owners' counsel represented to Plaintiffs' counsel that another charterparty dated May 5, 2021 had been incorporated by referenced into the bills of lading.  *Id.,* Exh. "D".  Owners have no documentation which would explain how the transferee of the bill of lading would know which of these three (3) charterparties had been properly incorporated by reference in each bill of lading.  *Id.,* ¶¶ 7, 11-14.

When the Vessel arrived in Chicago, co-defendant NORTH AMERICAN STEVEDORING COMPANY, LLC ("NASCO") was hired by Plaintiffs to unload the Cargo from the Vessel and issued an OS&D report which confirmed that the Cargo was wet when discharged from the Vessel.  *See* NASCO Over/Short & Damage Report dated May 27, 2022.  The purchasers rejected the Cargo and

2

refused to pay. Plaintiffs commenced this action to recover damages arising from the carriage of the

Cargo from Gemlik, Turkey to final destination, via Chicago, Illinois. None of the three (3)

charterparties were ever made known to Plaintiffs prior to the commencement of the voyage.

Plaintiffs only became aware of these three (3) alleged charterparties after their counsel attempted to

engage both Owners and Charterers in settlement negotiations, which occurred well after the Cargo

had been delivered in Chicago, Illinois. *Id.,* ¶¶14, 15.

## ARGUMENT

§2 of the FAA "mandates enforcement of valid, written arbitration agreements." *Tinder v.

Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). Whether the Court is deciding a motion to compel

arbitration or one seeking dismissal for improper venue under Rule 12(b)(3), "the central question . .

. is the same . . . : did the plaintiff[ ] agree to arbitrate the claims asserted in [its] complaint?" *Bahoor

v. Varonis Sys., Inc.*, 152 F. Supp. 3d 1091, 1096 (N.D. Ill. 2015) (citation omitted). In this case,

there was never any enforceable agreement to arbitrate between Plaintiffs and Owners. To be

enforced, arbitration must be agreed by the parties to a contract. As set forth in *AT&T Technologies

v. Communications Workers,* 475 U.S. 643, 658-59 (1986), the Supreme Court held:

> The first principle gleaned from the Trilogy is that "arbitration is a matter of contract
> and a party cannot be required to submit to arbitration any dispute which he has not
> agreed so to submit." *Warrior & Gulf, supra,* at 582; *American Mfg. Co., supra,* at
> 570-71 (BRENNAN, J., concurring). This axiom recognizes the fact that arbitrators
> derive their authority to resolve disputes only because the parties have agreed in
> advance to submit such grievances to arbitration. *Gateway Coal Co. v. Mine Workers,*
> 414 U.S. 368, 374 (1974).

In *Morgan v. Sundance, Inc.,* 596 U.S. 411, 142 S.Ct. 1708 (2022), the Supreme Court

specifically rejected Defendants' assertion of a "strong federal policy favoring arbitration" by stating:

> . . . . The policy is to make "arbitration agreements as enforceable as other contracts,
> but not more so." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404,
> n. 12 (1967). Accordingly, a court must hold a party to its arbitration contract just as
> the court would to any other kind. But a court may not devise novel rules to favor
> arbitration over litigation. *See Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 218-
> 21 (1985) . . . . The federal policy is about treating arbitration contracts like all others,

not about fostering arbitration. *See ibid.; National Foundation for Cancer Research v. A.G. Edwards & Sons, Inc.,* 821 F.2d 772, 774 (C.A.D.C. 1987) ("The Supreme Court has made clear" that the FAA's policy "is based upon the enforcement of contract, rather than a preference for arbitration as an alternative dispute resolution mechanism").

We now turn to how courts sitting in admiralty conduct a contractual analysis of bills of lading.[2]

**I. To Properly Incorporate by Reference the Charterparty's Arbitration Clause, the Bill of Lading Must Refer to the Charterparty in "Unmistakable Language"**

A charter will generally be incorporated if the bill of lading identifies either the signatories to the charterparty or place of execution of the charter, or at the very least the date of the charter. *See, e.g., Kaystone Chemical, Inc. v. Bow-Sun,* 1989 U.S. Dist. LEXIS 4384 (S.D.N.Y. 1989); *Continenal U.K. Ltd. v. Anagel Confidence Companies Naviera, S.A.,* 658 F.Supp. 809, 812-13 (S.D.N.Y. 1987) and *Lowry & Co. v. S.S. Nadir,* 223 F.Supp. 871, 874 (S.D.N.Y. 1963). Where the space for listing the name and date of the charterparty is left blank, courts have generally found against incorporation. *Continental Ins. Co. v. Polish Steamship Co.,* 346 F.3d 281, 283 (2d Cir. 2003) (to properly incorporate a charterparty, a CONGENBILL bill of lading must specifically refer to a charterparty by either naming all the parties to the charter or state the date or place of execution because bills of lading must be strictly construed); *New York Marine & General Ins. Co. v. S/S Ming Prosperity,* 920 F.Supp. 416, 427 (S.D.N.Y. 1996) (". . . [A]n incomplete or inaccurate reference to a charterparty in a bill of lading may prove insufficient to incorporate the charterparty to the bill of lading . . . at least when the party sought to be compelled is a stranger to the underlying charterparty." (citations omitted)); *CIA Platamon de Navegacion,* 478 F.Supp. 66 (S.D.N.Y. 1979) and *United States v. Cia. Naviera Continenal, S.A.,* 202 F.Supp. 698 (S.D.N.Y. 1962).

For incorporation, the bill of lading must at least refer to the date of the charterparty. *Hawkspere,* 330 F.3d at 234 (a charterparty is incorporated into a bill of lading when the charterparty

---

[2] *Met-Al, Inc. v. Hansen Storage Co.,* 828 F.Supp. 1369, 1375 (E.D.Wisc. 1993), *reconsid. den.,* 844 F.Supp. 485 (E.D.Wisc. 1994) ("Bills of lading are thus contracts between shippers and carriers that spell out the carrier's obligation to deliver specific goods to specific people or places.")

is "identified in the bill of lading, at the least, by date."); *Southern Cement LLC v. M/V Jin Hui,* 2006 WL 8437753, *1 (S.D.Ala. 2006) (motion to compel arbitration is granted because the bill of lading incorporated a charterparty when the bill of lading referred to a charterparty of a particular date); *Duferco Steel, Inc. v. M/V Kalisti,* 1996 U.S. Dist. LEXIS 7908, *8 (N.D. Ill. 1996) ("Here, the bill of lading identifies the charterparty it references by its date, which falls within the range of specificity courts have allowed for incorporation by reference."); *Cargill Ferrous Int'l. v. M/V Huta Zygmunt,* 1996 U.S. Dist. LEXIS 6290, *8 (E.D.La. 1996) ("Although the bill of lading could have been more specific, the Court finds that its identification of the charterparty by date was specific enough to provide sufficient notice to Cargill of the incorporation of the terms of the charterparty.").

However, without the date of the charterparty, courts have consistently held that the charterparty was not properly incorporated into the bill of lading. *See Southwestern Sugar & Molasses Co., Inc. v. The Eliza Jane Nicholson,* 126 F.Supp. 666, 668 (S.D.N.Y. 1954) (where all blank spaces in a form bill of lading [GENCONBILL is a form bill of lading] were filled in except those which would identify the charterparty, no charterparty was incorporated by reference into bill of lading, and therefore the arbitration clause was not enforceable).

Owners admit all the blanks on both the front and back of the GENCON bills of lading in which they could have identified the subject charterparty were left empty. Therefore, it is undisputed that none of the bills of lading referred to the charterparty in "unmistakable language."

In addition, there are three (3) different charterparties from which to potentially choose to be incorporated by reference in the bills of lading. As explained in the Boettner Dec., Owners apparently entered into a time charter between Polska and Pegasus [Doc. #20-2], and Pegasus in turn apparently entered into voyage charter with non-party BORUSAN LOJISTIK (Boettner Dec., Exh. "C") and Owners' counsel have identified yet a third charterparty as being possibly incorporated by reference (*Id.*, Exh. "D"). Owners have presented no documents supporting their argument that any particular

5

charter was specifically incorporated by reference in the bill of lading. This ambiguity alone dictates denial of Owners' motion to dismiss. *See Hawthorne Industrial Products v. M/V TAC IMOLA,* 656 F.Supp.3d 567, 573 (D.Md. 2023) (where each of the Bills of Lading were stamped at the top right corner with "TO BE USED WITH CHARTER-PARTIES Reference No. HWS20211013J DATED 13TH OCT 2021," but the text box which provided a space for a dated charterparty had been left blank, the court nevertheless concluded there was "confusion about what, or which, charterparty the Bills of Lading sought to incorporate."). Moreover, the time charter referenced by Owners' motion papers does not specifically refer to M/V DRAWSKO. In the box where the Vessel is to be identified, it is written "TBA" [Doc. #20-2, page 4 of 38]. Instead, the charterparty identifies several vessels, including M/V DRAWSKO (*id.* at page 11 of 38), which could perform. On their face, none of the available documents connect a specific charter with the subject bills of lading. The alleged charterparty states that bills of lading are to be issued pursuant to the charter (*id.* at page 17 of 38), but it would be up to Owners to specifically nominate a Vessel to complete a particular voyage (*id.* at page 13 of 38). It is not surprising that Owners' counsel identified on May 5, 2023 a charterparty on May 5, 2023 (Boettner Dec., Exh. "D") which differed from the charterparty identified by Owners [Doc. #20-2]. When the documentation lacks specificity, it is easy to become confused as to which charterparty relates to a particular bill of lading. This explains why the courts demand specificity and why Owners are not entitled to the benefit of the London arbitration clause as a matter of law.

## II. Bills of Lading Are Contracts of Adhesion.

Bills of lading are contracts of adhesion and must be strictly construed against the carrier.[3] *Import Export Steel Corp. v. Mississippi Valley Barge Line Co.,* 351 F.2d 503, 506 (2d 1965) ("Since the bill of lading is the only document which regulates the relations of transferees of the bill of lading which the [vessel] owner, its terms, including those incorporated therein, should be carefully if not

---

[3] ". . . [T]he term "carrier" means the owner, manager, charterer, agent, or master of a vessel." 46 U.S.C. § 30701.

restrictively construed."); *Nematollahi v. Starving Students, Inc.,* 2002 WL 31006127, \*8 (N.D.Ill. 2002) ("[B]ills of lading are contracts of adhesion, and thus, any ambiguities in contracts must be resolved against the carrier/drafter."); *Met-Al, Inc. v. Hansen Storage Co.,* 844 F.Supp. 485, 492 (E.D.Wisc. 1994) ("[B]ills of lading are contracts of adhesion which are strictly construed against the carrier."); *Canon USA, Inc. v. Nippon Liner Sys., Ltd.,* 1992 WL 82509, \*4  (N.D.Ill. 1992) ("[B]bills of lading are contracts of adhesion and are strictly construed against the carrier."); *Association Technique Internationale de Compagnies d'Assurances Maritime et Transports v. Cast Europe (1983) Limited,* 662 F.Supp. 1443, 1449 (N.D.Ill. 1987) ("Bills of lading . . . are . . . considered contracts of adhesion and are therefore construed against their preparers.") and *John B. Sanfilippo & Son., Inc. v. Consolidated Rail Corp.,* 659 F.Supp. 990, 993-94, fn. 6 (E.D.Ill. 1987) (To interpret a nine (9) month written notice of claim provision in a bill of lading, the court applied commercial contract principles to determine the parties' intent, including that bills of lading are contracts of adhesion).

**III.    To Justify Discovery As Requested, Owners Cannot Merely Allege Actual or Constructive Notice of the Charterparty; There Must Be Sufficient Ambiguity.**

Strictly construing the incorporation by reference of the terms of a charterparty into a bill of lading has long been a hallmark of maritime common law.  *See Michael v. S.S. Thanasis,* 311 F.Supp. 170, 173 (N.D. Cal. 1970) ("Thus a bill of lading will legally incorporate an arbitration provision of a charter party and be subject thereto when the charter party is clearly referred to in the bill of lading *and this fact is or should be known to the holder of the bill.*" (emphasis added)).  To reiterate, to properly incorporate by reference, the bill of lading should at the very least state the date of the charterparty.  *See Continental U.K. Ltd. v. Anagel Confidence Compania Naviera, S.A.,* 658 F.Supp. 809, 812-13 (S.D.N.Y. 1987).  Owners argue that actual or constructive notice of the Charterparty can overcome any failure to properly incorporate by reference the charterparty.  *See Barna Conshipping S.L. v. 8,000 Metric Tons,* 2010 U.S. Dist. LEXIS 117009, \*14 (S.D.Tx. 2010) (consignee of bill of lading was in receipt of correspondence placing them on actual notice that they

7

would be bound by the terms of the charterparty). Owners mischaracterize binding precedent. Courts may order limited discovery on the issue of notice only when the bill of lading is sufficiently ambiguous. *See Hawthorne,* 656 F.Supp.3d at 573 (there was insufficient evidence to conclude whether a specific charterparty had been incorporated by reference into the bills of lading, but since there clearly was evidence of some intent to connect the Booking Note to the Bills of Lading, the court acknowledged that "discovery may provide more context and clarity to the full scope of the agreements amongst the various chartering parties."). In this case, there is nothing which connects the subject bills of lading to Owners' designated time charterparty, other than the pre-printed language of the CONGENBILL form bill of lading alone—and when the date of the charter party has not been inserted—which is insufficient as a matter of law to create an ambiguity such that extrinsic evidence should be admissible.

### A. Although insertions into blanks in a bill of lading may create an ambiguity sufficient to warrant limited discovery, there were no such writings in this case.

Where language other than a date is inserted into the blanks used to identify the applicable charter, there may be sufficient ambiguity such that courts could order limited discovery on whether notice of the charterparty and the applicable arbitration clause can be inferred. For example, in *New York Marine Managers, Inc. v. M.V. "Topor-1,"* 1989 U.S. Dist. LEXIS 389, *12-16 (S.D.N.Y. 1989), there was a bill of lading which had form which mirrored the form used in this dispute. The bill of lading bore the legend "TO BE USED WITH CHARTER-PARTIES," Clause 1 of the Conditions of Passage, on the reverse side, read in relevant part:

> "All terms and conditions, liberties and exceptions of the Charterparty, dated as overleaf, are herewith incorporated."

> On the front side of the bill of lading, there is the "freight clause" which reads as printed:

> "Freight payable as per CHARTER-PARTY dated _____."

8

In *New York Marine Managers*, in the blank on the bill of lading, it was typewritten "FREIGHT PREPAID." Based on this record, the court ordered limited discovery on whether use of the term "FREIGHT PREPAID" in the freight clause was understood to incorporate the relevant charterparty or that a course of dealing created a reasonable inference expected incorporation of a particular charterparty. *Id.*

In *MacSteel International USA Corp. v. M/V Jag Rani,* 2003 WL 22241785, *3-5 (S.D.N.Y. 2003), the involved bill of lading used the same form as used in *New York Marine Managers, Associated Managers* and the case at bar, but the words "AS PER RELEVANT" was typewritten in the freight clause. The *MacSteel* court did order limited discovery on "whether the plaintiff has actual knowledge of the incorporation of the charterparty or whether the plaintiff, through course of dealing or some other means, had constructive knowledge that the words 'AS PER RELEVANT' incorporated the charterparty into the bill of lading." *Id.* at *5.

However, the use of wording other than the date of the charterparty does not always result in further discovery on the issue of notice. For example, in *Associated Metals & Minerals Corp. v. M/V Arktis Sky,* 1991 U.S. Dist. LEXIS 4194, **7-9 (S.D.N.Y. 1991), the involved bills of lading were the same form as used in *New York Marine Managers* and the case at bar. In the freight clause, it was typewritten "AS AGREED." The court in *Associated Metals* concluded there was "not . . . sufficient information which would indicate to the transferee of the Bill of Lading the specific charter should be incorporated." *Id.* at *9. Therefore, the charterparty was found not to be incorporated into the bill of lading.

As no such writings were inserted into the bills of lading herein, no ambiguity exists and no discovery is warranted here. *New York Marine, MacSteel* and *Associated* are of no assistance to Owners since there is no writing in our bills of lading which would connect them to Owners' time charterparty. To reiterate, Plaintiffs deny ever having received any charter party until after the Cargo had been rejected by receivers and a claims process initiated. Boettner Dec., ¶ 12.

**B. Another exception—not relevant here—is where there is a close commercial relationship between the transferee of the bill of lading and one of the signatories to the charterparty such that notice may be inferred.**

When there is a close relationship between one of the signatories to the charterparty and the transferee of the bill of lading, the court may order limited discovery to determine whether notice may be inferred. *See Dun Shipping Ltd. v. Amerada Hess Shipping Corp.,* 234 F.Supp.2d 291, 296 (S.D.N.Y. 2002) (court ordered limited discovery on whether Hovensa had actual knowledge of and acquiesced in the terms of the charter and, therefore, should be bound by its arbitration provision because of the close commercial relationship between Hovensa and Hess, even though the bill of lading did not incorporate by reference the charterparty). Owners cannot reasonably argue that there is any direct commercial relationship between Owners and Plaintiffs. Boettner Dec., ¶16; Affidavit of David Y. Loh dated February 26, 2024 ("Loh Aff."), Exh. "D" (Declaration of Duncan Ross dated February 1, 2024 ("Ross Dec.") at ¶3. Therefore, limited discovery on the issue of notice is not appropriate here.

**C. Identification of a specific charterparty is a precondition to incorporation, irrespective of actual or constructive notice of that charterparty.**

Courts have consistently held that knowledge of the charterparty's terms was irrelevant where blanks for identification of the charterparty in the bill of lading were left entirely blank. *See Cargill, Inc. v. Golden Chariot MV,* 31 F.3d 316, 319 (5th Cir. 1994) ("[T]he fact that the third party might be aware of the arbitration clause in the charterparty does not bind them to it. [The third party] could just as easily thought that because the bill of lading . . . did not refer to the charterparty . . . that the nonincorporation was intentional."); *Lafarge Corp. v. M/V Macedonia Hellas,* 2000 WL 687708, *5 (E.D.La. 2000) ("Regardless of any notice Lafarge may have had about the existence of a charterparty, the bill of lading, by its own terms (or lack thereof), does not incorporate the charterparty's arbitration clause. In other words, Lafarge had insufficient notice that the charterparty had been incorporated into the bill of lading."); *Mitsui & Co., Ltd. v. M/V Hermann Schulte,* 1996

10

WL 365660, *2 (E.D.La. 1996) ("Given the clear law providing that at least minimal identification of the charterparty is a precondition to its incorporation into a bill of lading, such an omission can only be regarded as a decision not to seek incorporation of the charterparty.") and *Amoco Oil Co. v. M.T. Mary Ellen,* 529 F.Supp. 227, 229 (S.D.N.Y. 1981) ("Plaintiff may be assumed to have had notice of the charterparty as well as of the bill of lading, but the bill contains no reference to the charterparty and so plaintiff's awareness of the charter suggests only that its nonincorporation was intentional."). *See also State Trading Corp. of India, Ltd. v. Grunstad Shipping Corp. (Belgium) N.V.,* 582 F.Supp. 1523, 1524 (S.D.N.Y. 1984) (where the charterer itself as a party to the charter and had full notice of its terms, the court refused to permit it to claim benefits resulting from the failure of the bill of lading to identify the charterparty by date and identity of its signatories). Owners' failure to acknowledge this line of cases is an admission that they are not distinguishable.

Defendants cite no decision in which a proper incorporation was found where the date of the charterparty was not identified in a CONGENBILL form bill of lading, even if there was some notice of the charterparty. *See Continental Florida Materials, Inc. v. M/V Lamazon,* 334 F.Supp.2d 1294, 1298-99 (S.D.Fla. 2004) ("The courts are extremely reluctant to find that a bill of lading incorporates a charterparty where, as here, the bill of lading does not clearly identify the date of the charterparty it purports to incorporate."). *Continental Florida* is relevant because the judge found the plaintiff to be on actual notice of an arbitration clause from a separate charterparty because the backside of the bill of lading stated that "all terms, conditions, liberties, and exceptions of the Charterparty, dated as overleaf, including the law and arbitration clause, are herewith incorporated." *Id.* at 1295. The court concluded that this language on the backside of the bill of lading was sufficient to put plaintiff on actual notice that its claims could be subject to arbitration, but, nevertheless held that the involved charterparty and its arbitration clause were not properly incorporated by reference in the bill of lading. *Id.* The facts of *Continental Florida* contradict Owners' argument that the CONGENBILL pre-

11

printed form language is sufficiently ambiguous to allow limited discovery. It should not escape notice that Owners seek discovery, even if limited, to clear up an ambiguity of their own making.

## IV.     ARBITRATION CLAUSE IS UNENFORCEABLE AS A MATTER OF LAW

According to *Vimar Seguros y. Reaseguros, S.A. v. M/V SKY REEFER,* 515 U.S. 528, 534 (1995), the London arbitration clause cannot be enforced because it acts as a prospective waiver of Plaintiffs' rights to pursue the statutory remedies under COGSA.[4] If this matter were referred to London arbitration, the panel would summarily exculpate both Owners and the ship. Loh Aff., Exh. "D". §3(8) of COGSA states as follows:

> Any clause, covenant, or agreement in a contract of carriage relieving the carrier or the ship from liability for loss or damage to or in connection with the goods, arising from negligence, fault, or failure in the duties and obligations provided in this section, or lessening such liability otherwise than as provided in this chapter, shall be null and void and of no effect.

> 46 U.S.C. § 30701 (COGSA § 3(8)).

The relevant question, therefore, is whether the [foreign] substantive law to be applied ". . . under a choice of form or choice of law clause ". . . will reduce the carrier's obligations to the cargo owner what COGSA guarantees." The Supreme Court further explained, with respect to a bill of lading, "were we persuaded that the choice-of-form or choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies, we would have little hesitation in condemning the agreement as against public policy." *SKY REEFER* at 539.

Defendant PEGASUS DENIZCILIK A.S. is the charterer and issuer of the bills of lading. Boettner Dec., Exh. "B". Each bill of lading is signed at the bottom "as Agent on behalf of the Charterer Pegasus Denizcilik A.S." *Id.* Plaintiffs have been unable to effectuate service of process upon PEGASUS through the Hague Convention because we must rely upon the Turkish Central Authority which does not respond to our inquiries as to status of service of process. Without the

---

[4] COGSA was "the culmination of a multilateral effort" to establish "a uniform system of international rules governing carrier and shipper liability." *Haynsworth v. The Corporation,* 121 F.3d 956, 968 (5th Cir. 1997)

presence of PEGASUS, Plaintiffs cannot be said to be in privity with either the registered ship owners, ERATO TWO SHIPPING LIMITED or the ship operators, POLSKA ZEGLUGA MORSKA. Mr. Ross, in his Declaration, points out there is no contractual obligation of Owners to Plaintiffs under English law. Stated another way, since Owners are not listed as parties to the bills of lading, Plaintiffs would not be able to rely upon any contract, as a matter of English law, to commence arbitration. Accordingly, Plaintiffs' claims "would lie in tort and/or bailment under English law and there would be no right to arbitration due to a lack of privity of contract." Loh Aff., Exh. "D" at ¶4. In addition, under English law, Plaintiffs would not be allowed to pursue their *in rem* claim in London arbitration.[5] Therefore, under English law, not only would Plaintiffs' *in personam* claims against Owners be eliminated, but a dismissal in favor of arbitration would also cut off Plaintiffs' *in rem* claim, both of which would be available under U.S. law. Enforcement of Owners' London arbitration clause, even if properly incorporated by reference, would violate the Supreme Court's application of COGSA in *SKY REEFER*.

In *Central National-Gottesman Inc. v. M/V GERTRUDE OLDENDORFF,* 204 F.Supp.2d 675 (S.D.N.Y. 2002), the Southern District of New York denied a motion to dismiss the complaint for improper venue based on a similar affidavit from an English solicitor. In relying upon the English solicitor's affidavit, the Court refused to enforce the London forum selection clause by citing to *SKY REEFER*, holding it was "persuaded that the forum selection clause at issue here essentially operates as a prospective waiver of Gotteman's right to pursue statutory remedies under COGSA. If the case were decided in London instead of this district, there is a strong likelihood that English courts would give force to an exculpatory clause in the bill of lading, insulating parties other than the shipowner from liability, in violation of COGSA." *Id.* at 679.

---

[5] *See THE MONROSA v. Carbon Black Export, Inc.,* 359 U.S. 180 (1959) (*in rem* actions are not governed by forum selection clause that does not explicitly name the ship).

13

Under COGSA, Owners are deemed to be "carriers" and have a non-delegable duty to care and protect the cargo. COGSA, §1(a). In other words, "whoever enters the contract of carriage with the shipper in a given transaction comes within the definition of a 'carrier' pursuant to . . . COGSA." *See Demsey & Associates v. S.S. SEA STAR,* 461 F.2d 1009, 1014-15 (2d Cir. 1972). In this case, Owners seek enforcement of the London arbitration clause in an effort to avoid liability altogether under English law, even though they would be deemed a "carrier" and thereby subject to COGSA under U.S. law. *SKY REEFER* requires public policy be applied to prevent enforcement of a London arbitration clause, which is in violation of COGSA § 3(8). 515 U.S. at 539.

We also cite to *International Marine Underwriters CU v. M/V KASIF KALKAVAN,* 989 F.Supp. 498 (S.D.N.Y. 1998) which refused to enforce a forum selection clause because the foreign forum did not recognize an action *in rem* against the vessel, thus raising the possibility that Plaintiffs would be deprived their rights under COGSA, if arbitration were commenced in London. COGSA Section [1(a] defines "carrier" as "the owner or charter who enters into a contract of carriage with a shipper." The *in rem* claim cannot be dismissed because Mr. Ross' Declaration confirms there is no *in rem* claim in London arbitration. Loh Aff., Exh. "D". Owners' London arbitration demand must be denied as English law and practice would not entertain either Plaintiffs' *in rem* claim against the ship, or Plaintiffs' *in personam* claims against the ship's owners and managers, as explained by Mr. Ross, which is in clear violation of COGSA §3(8), as set forth in *SKY REEFER*.

## CONCLUSION

For the foregoing reasons, there is no binding agreement to arbitrate this dispute because no charterparty was properly incorporated by reference into the subject bills of lading. Even if there was proper incorporation, which is denied, the London arbitration clause is unenforceable pursuant to COGSA §3(8). Owners' motion to dismiss meritless and should be denied in all respects.

14

Plaintiffs,

**THYSSENKRUPP MATERIALS NA, INC. d/b/a ThyssenKruppMaterials Trading North America and THYSSENKRUPP MATERIALS TRADING NA LLC**

By: */s/ David Y. Loh*
        One of Their Attorneys

David Y. Loh (*pro hac vice*)
KMA ZUCKERT LLC
1350 Broadway, Suite 2410
New York, NY 10018
dloh@kmazuckert.com

Deborah Moldover (ARDC No. 6717987)
KMA ZUCKERT LLC
200 West Madison Street, 16th Floor
Chicago, IL 60606
Tel: (312) 345-3000
dmoldover@kmazuckert.com

15