UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Thyssenkrupp Materials NA, Inc. et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 23-cv-03086 |
| ) | |
| v. ) | Judge Sharon Johnson Coleman |
| ) | |
| Pegasus Denizcilik A.S. et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Thyssenkrupp Materials NA, Inc. and Thyssenkrupp Materials Trading NA, LLC (together, "Thyssenkrupp") brought a five-count amended complaint against motor vessel Drawsko ("M/V Drawsko"), Polska Zegluga Morska P.P. ("Polska"), Pegasus Denizcilik A.S. ("Pegasus"), Erato Two Shipping L.t.d. ("Erato"), and North American Stevedoring Company, LLC ("NASCO"). Thyssenkrupp alleges: (1) breach of common carriage against M/A Drawsko, *in rem*, and Polska, Pegasus, and Erato, *in personam*; (2) breach of contract against Polska, Pegasus, Erato, and NASCO; (3) vicarious liability against Polska, Pegasus, Erato, and NASCO; (4) negligence against Polska, Pegasus, Erato, and NASCO, and (5) breach of bailment against Polska, Pegasus, Erato, NASCO, and M/V Drawsko. Polska and Erato move to dismiss Thyssenkrupp's amended complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). For the following reasons, the Court denies Polska and Erato's motion to dismiss [44].

**Background**

This action arises out of cargo Thyssenkrupp purchased from a Turkish shipper to be resold in the United States. Thyssenkrupp trades and imports steel products. Erato and Polska ("Owners") are the owners of M/V Drawsko. Pegasus chartered M/V Drawsko from the Owners on February 23, 2022, to carry Thyssenkrupp's cargo from Turkey to Illinois. And Thyssenkrupp

hired NASCO to unload the cargo in Illinois. Once the cargo arrived in Illinois, NASCO drafted an Over/Short & Damage Report, in which it reported rust and water damage of the cargo. Due to the damage, the purchaser refused to accept the cargo. Plaintiffs filed the present complaint for damages.

During early settlement negotiations, Owners allegedly informed Thyssenkrupp that they were bound by the arbitration clause of theirs' and Pegasus' February 23, 2022, Charter Party Agreement ("Charter Party").[1] Clauses 70 and 80 are the relevant clauses of the Charter Party. Clause 70 specifies:

> "(a) This Contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with the Contract shall be referred to arbitration in London in accordance with the Arbitration Act of 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provisions of this Clause.
>
> The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association ("LMAA") Terms current at the time when the arbitration proceedings are commenced."

Clause 81 specifies:

> "English Law to apply to this Charter Party. BIMCO[1] Arbitration clause to apply. LMAA small claims procedure for claims not exceeding USD 50,000. General Average to be settled in London as per latest York- Antwerp rules."

When Thyssenkrupp purchased the cargo, the shipper issued several bills of lading ("Bills"). At the top of the Bills is the language "TO BE USED WITH CHARTER-PARTIES." There are unfilled spaces on these Bills to list the Charter Party's date, the freight advance, and time used for loading. Further down the page is the language "Freight payable as per charter party." An "AS AGENT ON BEHALF OF THE CHARTERER PEGASUS DENIZCILIK A.S" signature appears at the bottom of the Bills' frontside.

---

[1] A Charter Party Agreement is an agreement to hire a vessel.

The "Conditions of Carriage" appear on the backside of the Bills, which has the language at the top of the page "TO BE USED WITH CHARTER-PRTIES." The Conditions of Carriage provides "All terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated." Thyssenkrupp's signature and stamp appears at the bottom of this page and Owners' names are not on the Bills.

**Legal Standard**

Rule 12(b)(3) allows a party to move for dismissal of an action when it is not filed in the proper venue. Fed.R.Civ.P. 12(b)(3). A motion to dismiss under Rule 12(b)(3) for improper venue is the appropriate procedure when a litigant seeks to dismiss a lawsuit based on an arbitration agreement. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). When deciding under Rule 12(b)(3), courts may consider materials outside of the pleadings, including the parties' arbitration agreement. *Continental Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). In determining whether an agreement's arbitration clause controls, federal courts apply state-law principles of contract formation. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019).

**Discussion**

The Court must decide whether an enforceable arbitration agreement exists between the Thyssenkrupp and Owners. Under the Federal Arbitration Act, a provision in a maritime transaction agreeing to settle a matter arising out of that transaction via arbitration is "valid, irrevocable, and enforceable." 9 U.S.C.S. § 2. The federal policy favoring arbitration is relevant to inquiries concerning the scope of an arbitration clause, but not inquiries concerning whether an arbitration clause is valid. *See Janiga v. Questar Capital Corp.*, 615 F.3d 735, 740 (7th Cir. 2010). Because an arbitration agreement is a contract, a party cannot be required to arbitrate where they have not agreed to do so. *Gore v Alltel Comm'cns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). To

3

compel arbitration the movant must show "(1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022) (citing *Druco Rests., Inc. v. Steak N Shake Enters.*, 765 F.3d 776, 781 (7th Cir. 2014)).

Owners argue that, even though Thyssenkrupp was not a signatory to the Charter Party, a valid arbitration agreement exists between them since the Charter Party was incorporated by specific reference into the Bills.[2] Owners explain that the Bills refer to *a* Charter Party five times: (1) at the top of the frontside of the Bills, which states "TO BE USED WITH CHARTER PARTIES;" (2) in the language "Freight payable as per charter party;" (3) in Pegasus' signature on the frontside as a charterer; (4) at the top of the frontside of the Conditions of Carraige, which states "TO BE USED WITH CHARTER PARTIES," and (5) in the language in Conditions of Carriage, which states "All terms and conditions, liberties and exceptions of the Charter Party dated as overleaf, . . . are herewith incorporated." Owners argue this language notified Thyssenkrupp that they were agreeing to more than the Bills. Owners also argue that Thyssenkrupp had actual notice of the arbitration clause since Thyssenkrupp was notified of the arbitration agreement during negotiations.

Thyssenkrupp responds that there is not a valid arbitration agreement between them and the Owners because the Charter Party is not incorporated into the Bills since the Bills do not identify the date or other specific information of the Charter Party.

Non-signatories can be bound by a Charter Party's arbitration clause if it is sufficiently broad, and the Bills incorporate the clause by specific reference. *See Duferco Steel Inc. v. M/V KALISTI*, No. 95 C 6438, 1996 WL 312084, at *3 (N.D. Ill. June 7, 1996) (Bobrick, Mag. J.). As the

---

[2] Owners argue that Thyssenkrupp is bound by shipper's notice of arbitration through an agency theory. Because the Owners raised the argument for the first time in their reply, it is waived. *See Muir v. Transportation Sec. Admin.*, No. 21-1312, 2021 WL 3780089, at *3 (7th Cir. Aug. 26, 2021).

parties point out, the Seventh Circuit has not extensively opined on what courts consider "specific reference." However, Seventh Circuit caselaw on this subject is still informative as it upheld a lower court's finding that a Charter Party was specifically incorporated into Bills when the Bills identified the Charter Party by date. *See Duferco Steel Inc. v. M/V Kalisti*, 121 F.3d 321, 325 (7th Cir. 1997). The magistrate judge in *Duferco* relied on *Cargill Cargo International* (regarding incorporation), where the court explained that although the Bills in that case could have been more specific by incorporating the clause, the names of the parties, or the place of making of the Charter Party, the Bills identified the date of the Charter Party, which was sufficient for incorporation. *Cargill Cargo International v. M/V Huta Zygmunt,* No. 95–2639, WL 229445 *2–3 (E.D. La. May 6, 1996).

Unlike *Duferco* and *Cargill Cargo International*, the Bills in this case failed to identify the Charter Party date. Similar to *Cargill Cargo International*, the Bills here did not expressly incorporate the Charter Party's arbitration clause, place of the making, or explicitly name the parties of the Charter Party. Regardless of the number of times the term "Charter Party" appears in the Bills and that Pegasus signed the Bills, the Bills do not specifically reference the Owners' and Pegasus' February 23, 2022, Charter Party, and therefore, Thyssenkrupp did not have sufficient notice of the arbitration clause. Further, the Owners fail to sufficiently support their claim that Thyssenkrupp had actual notice of the arbitration clause because they fail to cite to case law that such facts amount to actual notice, which constitutes as waiver. *See Kramer v. Banc of Am. Sec.*, LLC, 355 F.3d 961, 964 n. 1 (7th Cir. 2004). Because arbitration by its nature is a matter of contract law, the Charter Party's arbitration clause is not valid and enforceable here, as Thyssenkrupp could not have agreed to arbitration they did not have proper notice of.

Owners request for the Court to allow limited discovery to determine whether Thyssenkrupp had actual or constructive notice of the Charter Party. Because the Court holds there

is no valid arbitration agreement between Thyssenkrupp and the Owners, limited discovery is unnecessary, and Owners' request is denied.

**Conclusion**

For the forgoing reasons, the Court denies Polska and Erato's motion to dismiss [44].

**IT IS SO ORDERED.**

Date: 5/17/2024                                     Entered:

_____
SHARON JOHNSON COLEMAN
United States District Judge

6