**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THYSSENKRUPP MATERIALS NA, INC. d/b/a ThyssenKruppMaterials Trading North America and THYSSENKRUPP MATERIALS TRADING NA LLC, | ) | |
| Plaintiff, | ) | Case No. 23-cv-03086 |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | **In Admiralty** |
| M/V DRAWSKO, her engines, boilers, tackle, etc., *in rem*, PEGASUS DENIZCILIK A.S., POLSKA ZEGLUGA MORSKA, ERATO TWO SHIPPING LTD., NORTH AMERICA STEVEDORING COMPANY, LLC, *in personam*, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

ThyssenKrupp Materials Trading NA, LLC and Thyssenkrupp Materials NA, Inc. ("Plaintiffs") bring this action against M/V DRAWSKO *in rem* and Polska Zegluga Morska P.P. and Erato Two Shipping Ltd. ("Defendants") *in personam* arising from losses and damage to cargo carried by sea from Turkey to the United States. Before the Court are Plaintiffs' motion for partial summary judgment [141] and Defendants' motion for partial summary judgment [146] on the question of the law applicable to this dispute. For the reasons below, the Court denies Plaintiffs' motion and denies Defendants' motion.

**UNDISPUTED FACTS**

a. Compliance with Local Rule 56.1

Before proceeding with the facts of this case, the Court must address Defendants' argument that Plaintiffs did not comply with the Northern District of Illinois's Local Rule ("L.R.") 56.1 in

submitting their motion for partial summary judgment. A party moving for summary judgment is required to file "a statement of material facts … that attaches the cited evidentiary material" contemporaneously with its motion. L.R. 56.1(a)(2). Each statement must "be supported by citation to the specific evidentiary material, including the specific page number, that supports it." L.R. 56.1(d)(2). A party's summary judgment brief must cite to the specific paragraphs in the L.R. 56.1 statements or responses. L.R. 56.1(g).

The Court finds that Plaintiffs violated L.R. 56.1 by citing directly to the record, rather to the numbered paragraphs in their accompanying statement of material facts. *See Cavalier v. Speedway, LLC*, 2022 WL 900195, at *1 (N.D. Ill. Mar. 28, 2022) (Wood, J.) (internal citation omitted); *see also Thorncreek Apartments III, LLC v. Vill. of Park Forest*, 970 F. Supp. 2d 828, 838 (N.D. Ill. 2013) (Feinerman, J.) ("[C]itations to raw record materials rather than to [an L.R. 56.1(a)(3) statement] … has long and repeatedly been held … [to] violate[] Local Rule 56.1."). It is not the Court's responsibility to sift through the record to determine whether there is sufficient undisputed evidence to entitle a party to summary judgment. *Davis v. Carter,* 452 F.3d 686, 692 (7th Cir. 2006).

Moreover, Plaintiffs cite declarations with allegations that are not included in their L.R. 56.1 statement of material facts. Defendants had no opportunity to dispute any of those contentions in a L.R. 56.1 response.[1] Without submission of and proper citation to a L.R. 56. 1(b)(c)(3) statement, the Court has no way to ascertain which facts are undisputed, and such declarations cannot be considered. *See Hoosier v. Greenwood Hosp. Mgmt. LLC*, 32 F. Supp. 3d 966, 972 (Gilbert, M.J.) (N.D. Ill. 2014) (declarations not included in L.R. 56.1 statement may be disregarded because "[i]t is impossible for

[1] The party opposing summary judgment is required to file a response to the moving party's statement of material facts. L.R. 56.1(b)(2). In doing so, the responding party must admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact. L.R. 56.1(e)(2).

the Court to determine whether and, if so, to what extent those facts are disputed by [Defendant] and what evidence [Defendant] would cite in responding to the additional facts ….").

Plaintiffs' L.R. 56.1 statement itself suffers from deficiencies. Plaintiff failed to attach cited evidentiary material as exhibits to their statement of material facts. Several of Plaintiffs' statements of fact assert legal conclusions, which courts in this district disregard. *See, e.g., Venticinque v. City of Chicago*, 2025 WL 92536, at *1 (N.D. Ill. Jan. 13, 2025) (Ellis, J.).

The Court may rigorously enforce compliance with L.R. 56.1. *See, e.g., Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings"). Failure to comply with L.R. 56.1 is reason to deny a motion for summary judgment. *See Ammons v. Aramark Uniform Serv., Inc.,* 368 F.3d 809, 817 (7th Cir. 2004). For this reason, the Court denies Plaintiffs' motion for summary judgment without prejudice.

b. Legal Background

This dispute concerns limitation of liability provisions in several international conventions and domestic maritime laws: the Hague Rules and Hague–Visby Rules,[2] the U.S. Carriage of Goods by Sea Act ("COGSA"), and the Turkish Commercial Code.

The 1924 International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, known as the "Hague Rules," was the result of a multinational effort "to establish uniform ocean bills of lading to govern the rights and liabilities of carriers and shippers *inter se* in international trade." *Robert C. Herd & Co. v. Krawill Machinery Corp.,* 359 U.S. 297, 301 (1959). The

[2] A second international convention on bills of lading postdating the Hague–Visby Rules, the 1978 United Nations Convention on the Carriage of Goods by Sea (known as the "Hamburg Rules"), further amended the Hague Rules. However, the Hamburg Rules were not enacted by the United States nor Turkey, and are not referenced in the Bills of Lading. The Court's analysis is therefore limited to the Hague Rules, the Hague–Visby Rules, and the laws of the United States and Turkey.

original Hague Rules provided a liability limit of 100 pounds sterling per package or unit. A later protocol, the 1968 Hague–Visby Rules, amended the Hague Rules to replace the 100 pounds sterling liability limit with a per-package or per-kilogram limit.

The Hague Rules were adopted by the United States as COGSA in 1936. In the event of damage to or loss of cargo, COGSA limits liability to "$500 per package … or … per customary freight unit … unless the nature and value of such goods have been declared by the shipper before shipment and inserted in the bill of lading." *Id.* COGSA applies to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade …." 46 U.S.C. § 30701[3]; *see also Foster Wheeler Energy Corp. v. An Ning Jiang MV,* 383 F.3d 349, 355 (5th Cir. 2004) (holding that COGSA applies compulsorily to contracts for "the carriage of goods to or from U.S. ports in foreign trade"). However, COGSA allows parties to contract for a liability limit greater than its $500 per package limitation. *Id.*; *see also Royal Ins. Co. v. Orient Overseas Container Line Ltd.,* 514 F.3d 621, 627 (6th Cir.), *amended sub nom. Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.,* 525 F.3d 409 (6th Cir. 2008) (finding that parties were "free to contract for application of the liability limits set forth in either the Hague–Visby Rules or COGSA").

In 1955, Turkey ratified the Hague Convention. Turkey enacted the Hague Rules as the Turkish Commercial Code, Law No. 6762, its domestic law including certain provisions on maritime trade. While neither the United States nor Turkey is a signatory to the Hague–Visby Rules, the modern Turkish Commercial Code incorporates rules drawn from the Hague Rules, the Hague–Visby Rules, and later protocols amending the Hague Rules.

c. Factual Background

[3] Until 2006, COGSA was codified at 46 U.S.C.A. §§ 1300 *et seq.*; however, it is now an uncodified statute found in the note following 46 U.S.C.A. § 30701.

Plaintiffs commenced this action to recover the physical loss and damages arising from the ocean carriage of cargo from Gemlik, Turkey, to Chicago, Illinois.

The relevant Bills of Lading included the following General Paramount Clause:

> (a) The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment, shall apply to this Bill of Lading. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the [Hague Rules] shall apply.
>
> (b) Trades where Hague–Visby Rules apply. In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 – the Hague–Visby Rules – apply compulsorily, the provisions of the respective legislation shall apply to this Bill of Lading.
>
> (c) The Carrier shall in no case be responsible for loss of or damage to the cargo, howsoever arising prior to loading into and after discharge from the Vessel or while the cargo is in the charge of another Carrier, nor in respect of deck cargo or live animals.

Plaintiffs maintain that the Hague–Visby Rules should apply to this dispute as it is referenced in the General Paramount Clause, whereas Defendants argue for the application of COGSA.

**LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and … draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). In the context of cross-motions for summary judgment, courts "construe all inferences in favor of the party against whom the motion … is made." *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998).

After a party makes a motion for summary judgment, the adverse party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted).

**DISCUSSION**

The general facts of this case are not in dispute. Rather, the parties contest the meaning of the General Paramount Clause in the Bills of Lading. Under federal maritime choice-of-law principles, the Court looks first to any contractual choice-of-law provisions entered into by the parties. *See Hawkspere Shipping Co. v. Intamex, S.A.,* 330 F.3d 225, 232 (4th Cir. 2003) ("Where parties specify in their contractual agreement which law will apply, admiralty courts will generally give effect to that choice") (*citing Chan v. Soc'y Expeditions, Inc.,* 123 F.3d 1287, 1297 (9th Cir. 1997).

The relevant language in the General Paramount Clause contemplates three situations: (1) where there is legislation in the country of shipment enacting the Hague Rules, that legislation is applicable; (2) where there is no legislation in the country of shipment enacting the Hague Rules, any such legislation in the destination country is applicable; and (3) where there is no legislation enacting the Hague Rules in either the country of shipment or the destination country, the Hague Rules are applicable. It goes on to specify that where the Hague–Visby Rules apply "compulsorily" under this hierarchy, the "provisions of the respective legislation" apply to the Bills of Lading.

Defendants argue that the COGSA limitation of liability of $500 per package applies here because the Hague Rules are not "in force" in Turkey. To support their position, Defendants provide the opinion of Dr. Sami Aksoy, a legal expert in Turkish maritime law. Dr. Aksoy opined that although Turkey formally ratified the Hague Convention in 1955, Turkish courts "almost never directly applied [the Hague Rules] in legal disputes." (Dkt. 158-1) at *4. Instead, when a bill of lading is issued in Turkey, its courts look to the Turkish Commercial Code determine the applicable liability limits. *Id.* Defendants claim that because Turkish courts look to Turkey's statutory implementation of the Hague

Rules rather than applying the Hague Rules directly (*i.e.*, the 100 pounds sterling liability limit), the Hague Rules are not "in force" in Turkey.

Defendants' argument is unavailing. The fact that Turkish courts apply Turkish law, rather than applying the original Hague Rules directly, does not mean the Hague Rules are no longer "in force" in Turkey. Turkey "enacted" the Hague Rules when it became a signatory to the Hague Convention in 1955.[4] Turkey subsequently incorporated the Hague Rules into its Commercial Code, following other signatory nations' approach of enacting the Hague Rules into its domestic laws (as the United States did through COGSA). *See* (Dkt. 158-1) at *4. The current Turkish Commercial Code therefore constitutes the "Hague Rules … as enacted in the country of shipment." This is a clear-cut instance of the first scenario that the General Paramount Clause anticipates, which establishes that the Hague Rules as enacted in the country of shipment "shall" apply.

Furthermore, Article 8 of the 1924 Hague Convention states: "The provisions of this Convention shall not affect the rights and obligations of the carrier under any statute for the time being in force relating to the limitation of the liability of owners of sea-going vessels." International Convention for the Unification of Certain Rules of Law Relating to Bills of Lading, signed at Brussels on 25 August 1924, Art. 8. In other words, Hague Convention clearly contemplates that "any statute … in force" related to limitations of liability may override the provisions of the Hague Rules. Defendants' interpretation suggests that limitation of liability in the Hague Rules must prevail over any signatory's domestic law, and that if any signatory applies its own laws, its "enactment" of the Hague Rules is void. That cannot be the case, because Article 8 expressly permits that scenario. If

[4] Commentary of Turkish legal academics on this topic, cited by Dr. Aksoy, further supports the conclusion that the Hague Rules are "in force" regardless of their application in practice: "Considering the debates on the enforcement of the 1924 Hague Convention, the best solution would be for Turkey to promptly withdraw from the 1924 Hague Convention [to enforce its own rules]." (Dkt. 158-1) at *5 fn 14. This suggests that the Hague Rules would no longer be considered "in force" in Turkey if, for example, it withdrew from the Hague Convention.

Turkey's enactment of the Hague Rules is not "in force" because its courts apply the Turkish Commercial Code, Article 8 would be rendered meaningless.

Even if COGSA does apply to the Bills of Lading as "contract[s] for the carriage of goods by sea to … ports of the United States," COGSA permits parties to contract for their chosen liability limitation. Turkey's Commercial Code, Article 1178, which includes provisions on maritime trade regarding limitations on a carrier's liability, stipulates that a carrier is liable up to "666.67 units of account per package or unit or 2 units of account per kilogram of gross weight of the goods lost or damaged, whichever is the higher."[5] The language of the Bills of Lading evinces a contractual agreement to be bound by this higher liability limit by providing that "the Hague Rules … as enacted in the country of shipment" are the default rules, which in this case are provided in the Turkish enactment of the Hague Rules.

The General Paramount Clause designates Turkey's version of the Hague Rules as the governing law. Thus, the Court finds that the COGSA limitation of liability is not applicable in this case, and that Defendants are not entitled to limit their liability to $500 per package under COGSA. Accordingly, Defendants' motion for partial summary judgment is denied.

**CONCLUSION**

For these reasons, the Court denies Plaintiffs' motion for partial summary judgment [141] and denies Defendants' motion for partial summary judgment [146].

**IT IS SO ORDERED.**

Date: 9/15/2026

Entered: ______________________
SHARON JOHNSON COLEMAN
United States District Judge

[5] While Turkey did not formally adopt the Hague–Visby Rules, Dr. Aksoy opined that this liability limit incorporates features of the Hague–Visby Rules.